By the Court.
 

 The first question to engage bur attention is whether relator was in the classified service of the state at any time after April 1, 1940.
 

 Begulation of civil service is provided for by the Constitution; Section 10, Article XV, reads as follows:
 

 “Appointments and promotions in the civil service of the state * * *
 
 shall
 
 be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision.” (Italics ours.)
 

 The underlying purposes which lead to the passage of this provision were to secure the maximum of efficiency and integrity in the public service; to restrain persons occupying positions in the classified service from political activity; to prevent discrimination for political, religious or racial reasons; and to guarantee permanent tenure to persons in the classified service.
 

 Pursuant to the constitutional mandate the General Assembly passed a civil service code creating a State Civil Service Commission, defining its duties and powers and fostering civil service in the state, county, municipal and school governments. Sections 486-1 to 486-31, both inclusive, General Code. (103 Ohio Laws, 698, 106 Ohio Laws, 400.)
 

 
 *330
 
 By the provisions of the civil service code all positions in the service of the state are embraced within two divisions, unclassified and classified service. Persons in the unclassified service are not protected in their tenure' of office, nor are they prohibited from political activity; on the other hand, persons holding positions in the classified service are protected in their tenure and are prohibited from all political activity except to vote as they please and to express freely their political opinions.
 

 The commission is authorized by Section 486-7, General Code, to adopt administrative rules to make effectual the mandate of the civil service code.
 

 Section 1, Article III of the Constitution provides that the Secretary of State shall be an elective officer.
 

 Section 486-8, General Code, provides in part as follows:
 

 “(a) The unclassified service shall comprise the following positions, which shall not be included in the classified service, and which shall be exempt from all examinations required in this act.
 

 “1. All officers elected by popular vote
 
 or persons appointed to fill vacancies in such offices.”
 
 (Italics ours.)
 

 The relator by virtue of the statute entered the unclassified service on April 2, 1940, when he accepted the appointment as Secretary of State.
 

 It is claimed on his behalf that during the period he occupied the office of Secretary of State (April 2,1940, to January 13, 1941) he was on leave of absence from his position (statistician and editor) in the. classified service.
 

 At the threshold of our consideration of this contention we are met with this anomalous situation: On May 8, 1940, relator, as Secretary of State, granted to himself a leave of absence for one year from the position of statistician and editor which he did not then
 
 *331
 
 occupy, he having entered upon his duties as Secretary of State on April 2,1940. Later, on January 10,1941, as Secretary of .State, relator reinstated himself as of January 13, 1941, at which time he was not Secretary of State. The leave of absence, according to the letter of May 8, 1940, -was effective as of April 1, 1940.
 

 The court will take judicial notice that on April 1, 1940, the office of Secretary of State was vacant.
 

 We find nothing in either the code or the rules of the commission which provides authority for the procedure followed by the relator.
 

 This situation presents the further question of whether a person can hold a position in the unclassified service as the result of the acceptance of an appointment to fill a vacancy in an elective office, while on leave from a position in the classified service. In other words: Can a person occupy positions in both the unclassified and classified service at the same time, as above stated?
 

 A leave of absence properly granted to one in the classified service does not have the effect of taking the person to whom such leave is granted out of the employ of the state or out of the classified service. By such leave the employee forfeits none of his rights under the civil service law and therefore it would be a strange doctrine which would protect all the rights conférred upon the employee during such leave and yet would relieve such employee from all obligations and restrictions embodied in the same law which protects his rights. Such person is not separated from the classified service by mere leave of absence and although his actual service and compensation are suspended during the continuance of such leave he is for every other purpose and in all other respects subject to the statutory provisions applicable to employees in actual service.
 

 
 *332
 
 This is substantially the same conclusion reached by Judge Turner, now a member of this court, when he was Attorney General. (See Vol. 2, Opinions of Attorney General [1916], 1955, 1961.)
 

 A casual reading of the civil service code demonstrates clearly that the General Assembly created two classes of service. The rights and obligations of and restrictions upon persons in the classified service are wholly inconsistent with the rights and obligations of and restrictions upon persons in the . unclassified service.
 

 As we read and construe the code an employee in the classified service upon acceptance of an appointment to an elective office in the unclassified service thereby terminates his status as an employee in the classified service. If such employee at some future date desires to re-enter the classified service he must submit himself to a competitive examination in accordance with the provisions of the code. This the relator did not do. It follows, therefore, that he was not in the classified service on and after April 2, 1940.
 

 On May 8, 1940, the relator attempted to grant himself a leave of absence effective April 1, 1940, and on January 10, 1941, he attempted to reinstate himself as of the date of January 13,1941. Both of these actions were ineffective for the reason that relator was not Secretary of State on April 1, 1940, or on January 13, 1941.
 

 This conclusion in our opinion is . dispositive of the case. However, this question, although squarely presented by the record, was not seriously urged in the oral arguments or briefs.
 

 The question most strongly urged was whether the respondent had the legal authority under Section 486-8 (a) 8, General Code, to claim the position of statistician and editor exempt from the classified service.
 

 
 *333
 
 By relator it is vigorously asserted that under the facts in this case to so hold would be to render this section unconstitutional.
 

 This assertion is based upon the decision of this court in the case of
 
 State, ex rel. Townsend,
 
 v.
 
 Berning, Treas.,
 
 135 Ohio St., 31, 19 N. E. (2d), 155.
 

 The factual situation in the instant case is entirely dissimilar to the factual situation presented in the
 
 Berning case,
 
 and therefore that decision is not controlling here.
 

 The duties of the statistician and editor in the instant case are more nearly akin to the duties of the position of chief of the division of boiler inspection considered in
 
 State, ex rel. Myers,
 
 v.
 
 Blake, Dir.,
 
 121 Ohio St., 511, 169 N. E., 599.
 

 In that action the relator, Carl 0. Myers, prayed that a writ of mandamus be issued ordering respondent, Blake, to recognize him as the lawful incumbent of the position of chief of the division of boiler inspection in the Department of Industrial Relations. The respondent, Blake, claimed that position exempt from the classified service as one of the exemptions provided for by Section 486-8 (a) 8, General Code. Relator, Myers, held that position until it was claimed exempt by respondent at which time Myers was dismissed.
 

 This court, in that case, considered and passed upon these two questions among others:
 

 (1) Is the chief of the division of boiler inspection an assistant within the meaning of the term as used in paragraph (a), subdivision 8 of Section 486-8, General Code ?
 

 (2) Does paragraph (a), subdivision 8 of Section 486-8, General Code, contravene Section 10, Article XV of the Constitution of Ohio?
 

 The court answered the first question in the
 
 affirmative
 
 and the second question in the
 
 negative.
 

 
 *334
 
 It is here urged that by -reason of Section 157, General Code, which grants the power to the Secretary of State to appoint an assistant secretary of state, he cannot claim exemption of the position of statistician and editor as one of three assistants provided for in paragraph (a), subdivision 8 of Section 486-8,-General Code.
 

 • It is clear that the word ‘ ‘ assistants ’ ’ as used in Section 486-8 (a) 8, General Code, does not refer to the assistant secretary of state provided for in Section 157, General Code.
 

 Paraphrasing the language used in the
 
 Blake case, supra,
 
 the statistician and editor in the office of the Secretary of State is an-“assistant” to the head of the department, as an agent through whom the duties and purposes of the department are accomplished. It is in that sense that the word “assistant” was used by the General Assembly in Section 486-8 (a) 8, General Code, and as so used is not inconsistent with any constitutional provision.
 

 In our view the petition cannot be amended so as to state a cause of action. The demurrer is sustained, the writ is denied and the petition is dismissed.
 

 Writ denied.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Bell, Williams and Turner, JJ., concur.