Stewart, J.,
 

 It is conceded that the township trustees certified the zoning plan to the board of elections for submission on November 2, 1948, to the electors of the unincorporated area of the township, as directed by Section 3180-35, General Code, and that ballots were prepared for such election by the board of elections.
 

 The contestees contend that there are two issues involved in the present case:
 

 1. Whether the wording in the ballot complied substantially with the provisions of law, and,
 

 2. Whether, where there has been no protest' or remonstrance to such ballot wording prior to the election at which a majority voted in the affirmative, and there is no claim or proof that any one has been misled, such election shall be deemed to be invalid because of such ballot wording.
 

 The contesters say that the issue which they raised is whether the ballot used in the township election complied with the law or, in other words, whether the wording bn the ballot sufficiently apprised the electors
 
 *144
 
 of tlie question presented to them, as contemplated by law.
 

 The contesters maintain that the provision in Section 4785-103, General Code, that immediately below the title on the ballot shall be printed the text describing the question or issue, means that the ballot is invalid unless either the entire text of the issue, or at least the tenor or substance thereof, is set forth, and contesters cite definitions of “text” and “description” from Webster’s New International Dictionary (2 Ed.), as follows:
 

 “Text: ‘1-a. The actual matter of an author’s work, in distinction from a paraphrase, annotation, or commentary.
 

 “ ‘3-a. The main body of matter on a printed or written page, as distinguished from notes, etc.
 

 “ ‘b. The letterpress, as distinguished from illustrations and the margins.
 

 “ ‘5. Verse or passage of Scripture, esp. one chosen as the subject of a sermon, or in support of a doctrine.
 

 “ ‘7. An account; story, tale; also a saying; maxim; adage.’ ”
 

 “ ‘Description: (1) Discourse, or an example of it, designed to represent to the imagination a unit of objective or subjective experience, as a scene, person, sensation, emotion.
 

 “ ‘ (2) An enumeration of the essential qualities of • a thing or species; an informal definition.’ ”
 

 The contestees, on the other hand, contend that the construction of the language, “text describing the question or issue,” for which contesters contend, would lead to absurd and fantastic results; that it would necessitate the printing on the ballot of a colored map and the key of the zoning resolution with all the necessary explanatory material; and that even a digest or outline of the zoning plan would be so wordy
 
 *145
 
 and voluminous as to make practically impossible the preparation of a ballot. They rely upon item 6 of the definition of “text” in Webster’s New International Dictionary (2 Ed.), which reads, “hence, anything chosen as the subject of an argument, literary composition, or the like; topic; theme,” and they argue that under such a definition the text describing the question or issue was “whether or not the proposed plan of zoning shall be put into effect” and that, therefore, the language on the ballot complied with the statute.
 

 The argument seems to be whether “text” means the subject or the sermon.
 

 Many cases have been cited which are not strictly applicable to the present one.
 

 The case of
 
 State, ex rel. Greenlund,
 
 v.
 
 Fulton, Secy. of State,
 
 99 Ohio St., 168, 124 N. E., 172, which would seem to favor contesters’ claim, was distinguished in the case of
 
 Reutener
 
 v.
 
 City of Cleveland,
 
 107 Ohio St., 117, 141 N. E., 27, and the
 
 Fulton case
 
 was held to apply only to the question of proposed amendments to the Constitution.
 

 The contestees contend that, inasmuch as Section 3180-35 specifically provides what questions shall be submitted to the electors, the present case comes within those cases where it is “otherwise specifically provided by law” in Section 4785-103, and contestees cite the case of
 
 Leach
 
 v.
 
 Collins,
 
 123 Ohio St., 530, 176 N. E., 77, in support of that contention. However, in the
 
 Leach case
 
 there was involved a statute which specifically prescribed'the form of the ballot and it was held that the form of the ballot so prescribed was controlling and exclusive and that the statute prescribing it had not been repealed by the enactment of Section 4785-103. We are of the opinion that, since no specific form of ballot is prescribed in Section 3180-35,
 
 *146
 
 the provisions of Section 4785-103 apply to the present case, and we must, therefore, determine the meaning of the language in controversy, to wit, “text describing the question or issue. ’ ’
 

 The zoning plan, as adopted by the trustees, regulated, within zones or districts created, the location, height, bulk, the number of stories and size of buildings and other structures, including the percentage of lot areas which might be occupied, set back building lines, sizes of yards and other open spaces, the uses of buildings and other structures, and the uses of land for trade, industry, residence, recreation and other purposes. The plan divided the unincorporated area of the township into districts or zones, as shown by a map which was a part of the plan, and provided for the appointment of a board of zoning appeals with the duty to hear appeals and to perform certain other acts concerning the administration of the plan. If the law required the entire plan, with the map, to be placed upon the ballot, it would lead to a fantastic and grotesque result.
 

 As said by Judge Allen in
 
 Reutener
 
 v.
 
 City of Cleveland, supra,
 
 132, “It is self-evident that the placing of such a proposal upon the ballot might seriously complicate election arrangements. It would greatly increase the cost of printing the ballot: The bulk and size of such a proposal, if given verbatim upon the ballot, might necessitate a change in the size of the ballot boxes, at considerable expense to the municipality.”
 

 In fact, the printing verbatim of the plan and the map upon the ballot would be so utterly impractical that contesters themselves, while contending that “text” means the whole plan, suggest that a digest could be used, giving the voters, in substance, the provisions of the.plan and the location of the districts.
 
 *147
 
 But it would seem to us that even such a digest could not be practically used without omitting essential details of the plan, for the reason that there are so many various and particular matters provided in it.
 

 It is contended by contestees that all the requirements set out in Section 3180-26
 
 et seq.,
 
 General Code, were enacted by the General Assembly for the purpose of giving the inhabitants of an unincorporated district full knowledge of a proposed zoning plan, in order that they might be able to intelligently vote upon it when a compact text describing it was placed upon the ballot. In the present case there was an advertisement in the
 
 Cleveland Press
 
 on June 30, prior to the election, of a public hearing upon the proposed zoning resolution, held at the Bedford township hall on Friday, July 30, 1948, at 8:00 p. m., with the statement that the text and zoning map then posted in the township clerk’s office at 723 Broadway, Bedford, might be examined there between 9:00 a. m. and 5:00 p. m. on week days, and on Fridays the text and zone map might be examined at the township hall between 8:00 p. m. and 9:00 p. m.
 

 On August 9 there appeared in the
 
 Cleveland Press
 
 another advertisement for a public hearing upon the zoning resolution, held at the Bedford town hall on September 9, 1948, at 8:00 p. m., and that the text and zoning map, then posted in the township clerk’s office, 723 Broadway, Bedford, might be examined there between 9:00 a. m. and 5:00 p. m. week days.
 

 The township zoning commission sent to the rural mailbox holders in the unincorporated area of the township a card inviting the holders and their neighbors to various meetings, for discussions of the zoning resolution, held on July 9, 16 and 23, 1948, with a notice that the formal public hearing would be held July 30 at 8:00 p. m. at Bedford township hall. The record
 
 *148
 
 shows considerable other publicity with reference to the zoning plan prior to the election.
 

 If Section 4785-103 required the printing on the ballot of the text
 
 of
 
 the question or issue, it might be argued that regardless of the practical difficulties and grotesque results ensuing therefrom, it would have been necessary to have had the full text of the zoning plan printed, but, as stated, the section requires the printing of the text
 
 describing
 
 a question or issue, and the words, “the zoning plan for the unincorporated area of Bedford township, as adopted by the board of trustees of Bedford township, Cuyahoga county, Ohio,” described the question or issue which was the subject of the election.
 

 In the case of
 
 Moore
 
 v.
 
 Given,
 
 39 Ohio St., 661, the first paragraph of the syllabus reads:
 

 “It is the duty of courts in the interpretation of statutes, unless restrained by the letter, to adopt that view which will avoid absurd consequences, injustice or great inconvenience, as none of these can be presumed to have been within the legislative intent.”
 

 In the case of
 
 Hill
 
 v.
 
 Micham,
 
 116 Ohio St., 549, 157 N. E., 13, the
 
 Moore case
 
 was cited with approval and this court stated:
 

 “A statute is never to be understood as requiring an impossibility, if such a result can be avoided by any fair and reasonable construction.”
 

 Assuredly, in the present case, absurd consequences and great inconvenience, if not impossibility of performance, have been avoided by construing the language,
 
 “text describing the question or issue,”
 
 to mean something different from the meaning of the words,
 
 text of the question or issue.
 

 We hold, therefore, that the language on the ballot,
 
 supra,
 
 although it was not the text
 
 of
 
 the question or issue, nevertheless it was the text
 
 describing
 
 such question or issue.
 

 
 *149
 
 In view of the conclusion to which we have come, it is not necessary for us to pass upon the second issue stated by the contestees,' namely, that, since there-was prior to the election no protest or remonstrance to-the ballot wording and since there was, no claim or proof that any voter in the unincorporated area was-misled, the election should not be deemed invalid because of the ballot wording.
 

 This court held in the case of
 
 Mehling
 
 v.
 
 Moorehead,
 
 133 Ohio St., 395, 403, 14 N. E. (2d), 15:
 

 “Where bonds are to be issued or taxes levied, certain steps in the procedure are conditions precedent to taxing property owners. The failure to take such-steps is necessarily fatal. On the other hand, where there is an absence of fraud, a substantial compliance with the statute, and the voters are not misled, the-will of the electorate should not be set aside in the-selection of the officials of a community. Every reasonable intendment must be in favor of the validity of an election, and against holding it void for uncer- • tainty.”
 

 In the present case there was no claim of fraud on-the part of the officials; It is not disputed that no protest was made prior to the election and there is no evidence that any of the voters of the unincorporated' area of Bedford township were misled. Since there-were more votes cast upon the zoning-plan issue than were east for presidential electors at the same election,, it would seem that there was not only a lively interest but an intelligent conception upon the part of the electors with reference to such zoning plan.
 

 In the
 
 Mehling case, supra,
 
 this court said at page-406:
 

 “Strictly speaking, all provisions of election laws are mandatory in the sense that they- impose the duty of obedience upon those who come within their pur
 
 *150
 
 view, but irregularities, which were not caused by fraud and which have not interfered with a full and fair expression of the voters’ choice, should not effect a disfranchisement of the voters.”
 

 The judgment of the Court of Common Pleas is reversed.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Turner and Taft, JJ., concur.