HAYSLIP, APPELLANT, *v.* CITY OF AKRON ET AL., APPELLEES.

(No. 11605—Decided August 29, 1984.)

*James L. Burdon,* for appellant.
*Harold K. Stubbs,* director at law, for appellees.

GEORGE, J. The plaintiff-appellant, Lewis A. Hayslip, appeals the judgment of the trial court denying his request for a declaratory judgment. This court affirms that judgment.

The facts of this case are not in dispute. A joint stipulation of facts was filed. On December 31, 1969, Hayslip was appointed to the classified civil service of the city of Akron as a police officer. In 1979, he moved his residence to Mogadore, Ohio. He resigned from the police department on April 11, 1981. Four months later, he requested a reinstatement. On September 16, 1981, Hayslip was rehired by the city. At that time, Hayslip signed a form acknowledging the residency requirement provided in the city charter.

On August 24, 1982, Hayslip received notice that the Akron City Charter required him to become a resident of the city of Akron. Hayslip filed a declaratory judgment action seeking a declaration of his right to maintain his residence outside the city. The trial court held that Hayslip was required to comply with the city charter's resident requirement.

### Assignment of Error 1

"The residency requirement of Akron City Charter Section 106(5b) cannot be applied against a police officer, whose continuous employment, from December 31, 1969 through April 11, 1981, falls within the clear excepting language of subdivision 1 of that same section."

Akron City Charter Section 106(5b) provides in part:

"For declaring that no person shall hold an appointed or promoted position in the classified service of the City of Akron unless he shall become a resident citizen of the City of Akron within twelve (12) months of his appointment or promotion, and remain a resident citizen of the City of Akron during the term of his employment, except that such provisions shall not be applicable to:

"1. Full-time permanent employees of the City of Akron whose continuous employment began prior to and continued through November 7, 1978 * * *."

Hayslip argues that the exception provided in the charter applies to a person who was employed prior to November 7, 1978, and who was continuously employed through November 7, 1978. The fact that such employment was thereafter terminated is thus irrelevant.

In interpreting a city charter provision, the general principles of statutory construction will be applied. 20 Ohio Jurisprudence 3d (1980) 477, Counties, Townships, and Municipal Corporations, Section 491. The objective is to give effect to the intention behind the provision. *Henry* v. *Central Natl. Bank* (1968), 16 Ohio St. 2d 16, paragraph two of the syllabus. Further, in construing a charter provision, this court will be guided by common sense and reason, giving each word some meaning. *Prosen* v. *Duffy* (1949), 152 Ohio St. 139 [39 O.O. 444], paragraph one of the syllabus.

The charter provision specifically exempts those employees who were employed prior to November 7, 1978. The exemption applies to permanent full-time employees whose employment (1) was continuous; (2) began prior to November 7, 1978; and (3) continued through November 7, 1978. If the word "continuous" as used in the exemption is to have any significance, it must be descriptive of one's employment history. That is, one's employment within the city must be uninterrupted employment.

A city employee who has uninterrupted service is exempt from the residency requirement provided the employee's service began prior to and continued through November 7, 1978. Hayslip's resignation created an interruption in his service divesting him of exempt status. As his resignation created a break in his service, his subsequent re-employment lacked the feature of continuity required for exemption eligibility. Such re-employment could not qualify as continuous employment nor could it restore exempt status. He was thus ineligible for exemption from the residency provision.

Accordingly, this assignment of error is overruled.

### Assignment of Error 2

"The Personnel Director of the City of Akron has no authority to order compliance with a charter amendment in the absence of a civil service rule or regulation from which his authority is derived."

Hayslip argues that the charter provision is not self-executing. He continues that since no ordinance was passed to enforce the residency requirement, it cannot be enforced against him.

Generally, a self-executing provision is one which includes the rules or means by which it may be enforced. *Stange* v. *Cleveland* (1916), 94 Ohio St. 377, 380. A charter provision which is not self-executing is one which requires some additional expression, legislative or otherwise, which makes it enforceable. *Taylor* v. *Cleveland* (1950), 87 Ohio App. 132

[42 O.O. 348], paragraph two of the syllabus.

In the instant case, the charter provision included the rules necessary for its implementation. Nothing additional was needed for its application. Further, the language used in the charter provision does not reflect a need for any additional legislation to give it vitality. Therefore, it is self-executing.

Hayslip next argues that the personnel director has no authority to force Hayslip to comply with the residency requirement. The record reveals that the personnel director informed Hayslip of this residency requirement but that he did not take any action to terminate Hayslip's employment for non-compliance. Therefore, this issue is premature. Accordingly, this assignment of error is overruled.

### Assignment of Error 3

"Execution of a form acknowledging the residency requirements of Akron City Charter Section 106(5b) as well as the excepting language of Subdivision 1 is not a waiver of the employee's right to claim protection under the excepting language."

Hayslip signed a residency requirement acknowledgment, which states in pertinent part:

"I have read Section 106(5b) of the Akron City Charter and understand that if I am appointed or promoted to a position entailing work performed within the corporate limits of Akron, *I AM REQUIRED TO BECOME A RESIDENT OF AKRON WITHIN TWELVE MONTHS* and that *I MUST REMAIN A RESIDENT DURING MY EMPLOYMENT.*"

This document does not constitute a waiver or release of Hayslip's rights but rather provided notice to him of the residency requirement. Secondly, as pointed out in assignment of error one, the residency exemption did not apply to Hayslip. Thus, he had no rights to waive.

Accordingly, this assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD, P.J., concurs.

MAHONEY, J., dissents.

MAHONEY, J., dissenting. I respectfully dissent from the majority decision.

Section 106(5b)(1) of the Akron City Charter defines a class of persons who are exempt from the residency requirement. On November 7, 1978, the number of those exempt was precisely determinable for all time. The charter is silent as to the effect of resignation and reinstatement. The appellant was a member of that class on the day he resigned. The issue is simply whether he lost membership by resignation and/or could not maintain or regain that status upon reinstatement.

When Hayslip was reinstated, he again became a full-time permanent employee whose employment "began prior to and continued through November 7, 1978." The word "continuous" as used in the charter provision is superfluous to the entire clause. November 7, 1978 is the cut-off date for determining this exempt status. There is no provision for interrupted service. Statutory rules of construction require that laws in derogation of personal liberty be strictly interpreted. *Cincinnati* v. *Alexander* (1978), 54 Ohio St. 2d 248 [8 O.O.3d 224].

While Hayslip may have lost some seniority rights by virtue of statutory provisions and/or civil service regulations, his service with the city dates from June 6, 1970, by the city's own records. He simply regained or maintained an exempt status that he acquired on November 7, 1978. That status is not detrimental to the rights of any other employee.