OPINION
This appeal is taken from a final judgment of the Lake County Court of Common Pleas. Appellant, the City of Mentor ("the city"), appeals the trial court's decision to grant appellee, Deborah M. Lane, declaratory and injunctive relief, and the court's decision to enjoin appellant and its agents from appropriating certain property without first receiving voter approval.
The following facts are undisputed. Appellee is a resident and taxpayer living in the City of Mentor. On October 15, 1998, she filed a complaint in the General Division of the Lake County Court of Common Pleas for declaratory and injunctive relief. The action was brought as a taxpayer suit pursuant to R.C. 733.59. In the complaint, appellee alleged that appellant, a chartered municipal corporation, had appropriated approximately seventy-five acres in an area known as the "White Triangle" without voter approval in violation of the city's amended charter.
On October 20, 1998, appellee filed with the trial court a motion for a temporary restraining order. The trial court denied appellee's motion in a judgment entry dated October 28, 1998. In the same judgment entry, the trial court ordered the case to be submitted on the briefs of the parties.[1]
Appellee filed a brief in support of her motion for a permanent restraining order and declaratory and injunctive relief on October 27, 1998. On November 3, 1998, appellant filed a motion to dismiss appellee's complaint pursuant to Civ.R. 12(B)(6), arguing, among other things, that the clear language of the charter only refers to property already owned by the city and not to property scheduled for future acquisition, and that the Domestic Relations Division of the Lake County Court of Common Pleas actually had jurisdiction over appellee's complaint.
On March 10, 1999, the trial court issued a decision in which it denied appellant's motion to dismiss and granted appellee the requested permanent declaratory and injunctive relief. In doing so, the trial court found that the amended charter required appellant to submit any legislation concerning the acquisition of property in the "White Triangle" area for voter approval, and that absent voter ratification, any proposed legislation pertaining to the property becomes a nullity.[2]
From this judgment entry, appellant filed a timely notice of appeal, and now asserts the following assignments of error for our review:
 "[1.] The trial court erred in overruling the Motion of the Defendant City of Mentor to Dismiss the Complaint for the reason that that the Complaint failed to state a claim upon which relief can be granted.
 "[2.] The trial court erred in ordering the City of Mentor, its officers, agents, servants, employees and attorneys, to comply with Article III, Section 3.09, Subsection (6) of the Charter of the City of Mentor when there was no support for the order in the pleadings or the proof.
 "[3.] The trial court erred in granting final judgment to Plaintiff without providing the Defendant City of Mentor the opportunity to answer and to raise its defenses."
Because appellant's first and second assignments of error are interrelated, we will address them in a consolidated fashion. Appellant argues that the amended charter is only applicable to park lands already owned by the city or acquired by the city in the future. As a result, appellant maintains that the plain language of the amended charter is clear and leads to a singular conclusion; i.e., that voter approval is only required if the city already has some interest in the property. For the following reasons, we agree.
When considering a Civ.R. 12(B)(6) motion to dismiss a complaint, the trial court must determine whether it appears beyond a reasonable doubt from the complaint that the plaintiff can prove no set of facts entitling him or her to recovery. State ex rel. Rutledge v. Dept. of Rehab. andCorr. (Mar. 3, 2000), Trumbull App. No. 98-T-0191, unreported, at 6, 2000 Ohio App. LEXIS 792, citing O'Brien v. Univ. Community Tenants Union
(1975), 42 Ohio St.2d 242, syllabus. All factual allegations of the complaint are presumed true and all reasonable inferences are made in the plaintiff's favor. State ex rel. Kaylor v. Bruening (1997),80 Ohio St.3d 142, 144, citing State ex rel. Findlay Publishing Co. v.Schroeder (1996), 76 Ohio St.3d 580, 581. Our review of the trial court's actions with regard to a motion to dismiss is de novo. Rutledge
at 6, citing Mitchell v. Speedy Car-X, Inc. (1998), 127 Ohio App.3d 229,231.
In interpreting a municipal charter, the general principles of statutory construction will be applied. Hayslip v. Akron (1984),21 Ohio App.3d 165, 166. Thus, the language used in a municipal charter should be construed according to its ordinary and common usage. Hayslip
at 166; State ex rel. Fattlar v. Boyle (1998), 83 Ohio St.3d 123, 127, citing State ex rel. Minor v. Eschen (1995), 74 Ohio St.3d 134, 138.
Applying these rules of construction to the pertinent charter provisions in the case at bar, we conclude that the trial court misinterpreted the amended charter. Section 3.09(A), Article III of the Charter of the City of Mentor provides in relevant part:
 "The following shall not become effective until it is approved by a majority of the electors of the city of Mentor voting thereon at the next general or primary election occurring not less than sixty (60) days after passage of such legislation:
"* * *
 "(6) Legislation related to or authorizing any of the following activities on or about certain parcels of real estate or interest therein held by the City of Mentor described as the entire marina, uplands, forest, marsh, shoreline and waterfront area which the City of Mentor purchased from the Blue Heron Development Ltd. and known as the Mentor Lagoons and more fully described as including but not limited to the following * * * and including any of the lands adjacent, abutting or in close proximity to this park area which are acquired in the future including but not limited to the so-called `White Triangle' R-4 zoned parcel:
"* * *
 "(b) Conveyance of real property interests (including but not limited to sale; rent; lease; vacation; granting of easements; syndication and/or franchise) * * *
"* * *" (Emphasis added.)
As we noted earlier, appellant argues that a plain reading of the preceding provision requires voter approval for properties currently owned by the city and not to the acquisition of additional lands. The trial court, however, found that the language was clear on its face and left "little room for the convoluted and dramatic misreading urged by [appellant]." Based on its "plain reading" of the charter, the trial court concluded that the amendment applied to both land presently owned by appellant, and to the land designated in the provision if acquired in the future. In other words, the trial court held that the city may pass legislation concerning the designated land, but the legislation does not become effective without subsequent voter ratification.
After careful consideration of the amended charter, and of the parties' respective arguments, this court cannot agree with the trial court's interpretation. The charter provision in question only applies to "[l]egislation related to or authorizing any of the following activities on or about the certain parcels of real estate or interest therein held
by the City of Mentor[.]" (Emphasis added.) Therefore, the key word in this sentence is "held," because for this provision to apply, a plain reading of the language leads to but one conclusion; to wit, appellant must hold some interest in the land in question. If appellant does not have any interest in the land, the voters have nothing to vote upon.
Without question, if appellant were to acquire the "White Triangle" property in the future, subsequent activity on or involving the land would certainly be subject to the city's charter because appellant would then have an interest in the property. If the supporters of the amendment wished to include lands not already owned by appellant, they should have included an appropriate provision to that effect. Nevertheless, without such a provision, and taking all of appellee's factual allegations as true, we conclude that Section 3.09, Article III of the city's charter only applies to land already owned by the city. It does not apply to land appellant attempts to acquire until the city actually has received some interest in the property. Appellant's first and second assignments of error have merit.
In its third assignment of error, appellant argues that after denying its motion to dismiss, the trial court should have given the city an opportunity to file an answer rather than granting final judgment to appellee. According to appellant, there were several issues that could have been raised which were not appropriate in the context of a motion to dismiss brought pursuant to Civ.R. 12(B)(6). We agree.
Under Civ.R. 12(B), a defendant in a civil action has the option of filing a motion to dismiss before filing a responsive answer to the plaintiff's complaint. If a motion to dismiss is filed rather an answer, the trial must rule on the motion to dismiss, and if the trial court denies the motion, "a responsive pleading, delayed because of service of the motion, shall be served within fourteen days after notice of the court's action[.]" Civ.R. 12(A)(2). Once an answer has been filed, the trial court may then, upon motion of any party, proceed to decide the case solely on the pleadings. Civ.R. 12(C).
The trial court in the case at bar, however, failed to follow this procedure. Nevertheless, because of our disposition of appellant's first and second assignments of error, appellant was not prejudiced by the trial court's oversight. Appellant's third assignment of error has merit to limited extent indicated.
Based on the foregoing analysis, the judgment of the trial court is reversed, and we enter judgment in favor of appellant.
 ________________________________ JUDITH A. CHRISTLEY, JUDGE
FORD, P.J., O'NEILL, J., concur.
[1] Although not clear from the record, it appears that a hearing on appellee's motion was held on October 22, 1998. No transcript of this hearing has been filed with this appeal.
[2] On March 15, 1999, appellant filed a motion to vacate the trial court's judgment. Appellee filed a brief in opposition. The trial court denied appellant's motion on April 2, 1999, concluding that appellant had presented no new arguments that had not already been duly considered by the court.