JOURNAL ENTRY and OPINION
A "temporary" civil service employee is an employee appointed to a position without first having undergone civil service testing or placement on an eligibility list. By law, workers cannot maintain temporary civil service positions for more than ninety days. The city of Cleveland employs a number of temporary civil service workers, even though many of those workers have been on the payroll for considerably longer than the ninety-days permitted by law — in some cases, many years longer. After protracted litigation, the court ordered the city to establish testing procedures and create eligibility lists for original appointments and promotions of those workers who were employed in the civil service system. The city complied with this order as to "original appointments," but balked at establishing testing and eligibility lists for those workers with "temporary appointments" who also belonged to collective bargaining units. The practical effect of the court's order, at least insofar as the city is concerned, is that it would require unionized employees who had been hired as temporary civil service employees to undergo civil service testing and be placed on eligibility lists for hire. This would likely violate the terms of existing collecting bargaining agreements. The question presented in this appeal is whether the term "original appointments" encompasses "temporary appointments."
"The spirit of the classified civil service law, as shown by the basic constitutional provision, is that appointments "shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations." State ex rel. Higgins v. George (1946),147 Ohio St. 165, 168, citing Section 10, Article XV, Ohio Constitution. This is to effectuate the purpose of securing the maximum of efficiency and integrity in the public service; restraining persons occupying positions in the classified service from political activity; preventing discrimination for political, religious or racial reasons; and guaranteeing permanent tenure to persons in the classified service. Stateex rel. Neffner v. Hummel (1943), 142 Ohio St. 324, 329.
The city charter creates two classes of civil service employees: classified and unclassified. The unclassified civil service includes all officers elected by the people, all directors of departments, the clerk of the city council, the chief of police, the members of boards or commissions appointed by the mayor, the mayor's secretary and one secretary for each director of a department, eight executive assistants for the mayor, students enrolled in a recognized college or university training program, school crossing guards, and members of the auxiliary police force. See Cleveland City Charter, Section 126(1).
All other employees are considered to be members of the classified civil service. The unclassified civil service is divided into three classes of workers: the competitive class, the non-competitive class and the ordinary unskilled labor class. See Cleveland City Charter, Section 126(2).
Appointments to civil service jobs are made from eligible lists established through competitive testing that measures a candidate's fitness for a particular job. Id., Section 129. If there is no eligible list for a particular job, a person may be temporarily appointed, without a test, for no more than ninety days. Id., Section 130. During that period, the civil service commission is to hold the necessary tests for filling the position permanently.
When the city seeks to fill a position in the classified civil service, it "appoints" one of the three highest ranking persons on an eligibility list. An original appointment is probationary in nature, and the appointment is not considered final unless the appointee has satisfactorily served the probationary period. Id.
The civil service commission has established rules for testing that generally require open, competitive tests to be given for all applicants. Non-competitive tests may be given if the position requires "particular and exceptional qualifications of a scientific, managerial, professional or educational nature." See Cleveland Civil Service Commission Rule 4.60.
This action began when plaintiff Cleveland Civil Service Commission Employee's Association and three other individuals (we refer to them collectively as "plaintiff") brought suit against the city and the civil service commission alleging that the city made temporary appointments that far exceeded the ninety day time period, had failed to create eligible lists for certain classified civil service positions, and had improperly promoted persons who had not been certified by the civil service commission.
During the course of the litigation, the issues focused on temporary appointees who were also members of a collective bargaining unit. The city admitted that it had 537 temporary appointees, and seventy-five percent of those temporary employees were covered by a collective bargaining agreement.
In a ruling on cross-motions for summary judgment, the court ordered the city to "prepare and administer examinations for any non-bargaining unit position in the classified civil service now, or hereinafter, held by any temporary appointee within ninety (90) days of the hiring of any temporary employee." The court also ordered the city "to prepare and administer promotional examinations for any non-bargaining unit position in the classified service below the lowest grade which is now or hereinafter occupied by a temporary employee unless it is not practicable to do so." Finally, the court ordered the city to "prepare and administer open, competitive examinations" for any non-bargaining unit positions unless the civil service commission makes a specific finding that the position requires peculiar and exceptional qualifications. The court made it clear that questions of fact remained on whether plaintiffs had standing to represent employees currently bound to collective bargaining agreements. The city did not appeal.
The question reserved by the court, whether temporary positions held by employees bound by collective bargaining agreements, became the next object of dispute. At the core of this dispute was the definition of the term "original appointments." Plaintiffs argued that the term original appointments meant "all non-promotional appointments that are subject to pre-hire civil service testing," and this would preclude the city from entering into collective bargaining agreements that circumvent pre-hire testing requirements. The city argued that the term original appointments excludes the term "temporary appointments." It maintained it was able to enter into collective bargaining agreements that defined terms of employment like promotions and temporary appointments to classified civil service positions.
The court ruled that R.C. 4117.08, which states that "original appointments" are "not appropriate subjects for collective bargaining," required the city "to follow applicable civil service rules and regulations when making original appointments in the classified civil service of the City of Cleveland." The court ordered the city to (1) administer open, competitive examinations for all original appointments in the classified civil service unless the appointments are for the non-competitive class or to the unskilled labor class; (2) administer non-competitive examinations for all original appointments into the non-competitive classified civil service; and (3) comply with the city charter for all original appointments into the unskilled labor class. Crucial to this appeal, the court stated:
 The term "original appointment" shall include all appointments made into the classified service of the City, including regular and temporary appointments, but shall not include the promotional appointment of a City employee pursuant to procedures contained in a collective bargaining agreement.
 I
The city's first assignment of error complains that plaintiff has no standing to represent city employees working under collective bargaining agreements. The city claims that only the unions representing these workers have the standing to enforce the civil service requirements against those workers. The court specifically reserved ruling on this question when addressing the first set of motions for summary judgment.
It is by no means clear that plaintiffs purported to represent civil service employees working under collective bargaining agreements. Of the three individually named plaintiffs in the case, one was a temporary employee who had served beyond the ninety day period allowed by law and the other wished to take promotional exams for higher level positions held by temporary employees (the third individually named plaintiff was listed as a city taxpayer, with no allegation that she held a civil service position with the city). There are no allegations that any of the named plaintiffs are members of collective bargaining units, and none of the evidentiary materials suggest this conclusion.
But even were we to assume that the court's actions directly affect employees who are members of collective bargaining units, we fail to see how the city has standing to raise arguments on behalf of those workers. In fact, the city correctly cites to decisions that say a union is the exclusive bargaining representative for its members. See, e.g., ClevelandBd. of. Edn. v. Intl. Brotherhood of Firemen Oilers, Local 701 (1997),120 Ohio App.3d 63, 64. Collective bargaining unit members had the ability to intervene in the action, and at least one collective bargaining unit did seek to intervene in the case. It did so more than six years after commencement and just months before plaintiffs filed their motion for summary judgment. The court denied that motion for intervention, and the collective bargaining unit did not appeal, ending its right to complain. See Januzzi v. Hickman (1991), 61 Ohio St.3d 40,45.
Our result is further dictated by R.C. 4117.08(B), which states:
 The conduct and grading of civil service examinations, the rating of candidates, the establishment of eligible lists from the examinations, and the original appointments from the eligible lists are not appropriate subjects for collective bargaining.
This means that original appointments are not subject to collective bargaining agreements, so representation by collective bargaining units is of no initial concern. As we shall see shortly, there is no substantive difference in the requirements for "original" appointees as opposed to "temporary: appointees, so R.C. 4117.08(B) would refute any issues relating to standing for those employees covered by collective bargaining agreements. The first assignment of error is overruled.
 II
The second, third and fourth assignments of error raise issues relating to the court's definition of the term "original appointment." The city argues that the court usurped the city's right to define the term under its home rule powers and that in any event, material issues of fact exist concerning the definition of the term.
The city first claims that its definition of "original appointment," as set forth in the rules of the civil service commission, supersedes the trial court's definition as a matter of law. The glossary of terms to the Cleveland Civil Service Commission Rules states:
 REGULAR (OR LEGAL) APPOINTMENT): shall be either Original or Promotional.
 (A) Original Appointment shall be any appointment made from an eligible list, created as a result of either competitive or non-competitive entrance examination, or by registration of the unskilled labor class.
 (B) Promotional Appointment an appointment shall be deemed to be promotional when made from any promotional eligible list and which involves either advancement in rank and/or increase in salary beyond the fixed grade limit for a classification or both. (Emphasis sic.)
The city's argument boils down to this: the charter defines an "original appointee" as a person who has been employed from an eligible list drawn up after competitive testing; a "temporary appointee" is one appointed to a position if no eligible list exists; by nature, a temporary appointee will not have taken any competitive testing, so that person could not fall within the definition of an "original appointee" because an original appointee must, by definition, have taken the competitive tests.
When construing the interpretation of a city charter, we apply general principles of statutory construction. Hayslip v. Akron (1984),21 Ohio App.3d 165, 166. As a matter of law, we review matters of statutory construction de novo. Ritchie v. Weston, Inc. (2001),143 Ohio App.3d 176, 179, citing State v. Wemer (1996),112 Ohio App.3d 100, 103. We give the language used in the charter its ordinary and common usage. State ex rel. Fattlar v. Boyle (1998),83 Ohio St.3d 123, 127, citing State ex rel. Minor v. Eschen (1995),74 Ohio St.3d 134, 138.
The city is a home rule municipality with the right to regulate the appointment of its employees. This home rule authority gives it the right to enact ordinances that conflict with state statutes on matters of local self-governance. See State ex rel. Canada v. Phillips (1958),168 Ohio St. 191. But we cannot accept the city's argument that it should have sole authority under its home rule powers to interpret its civil service definitions.
The precedent for matters of charter interpretation make clear that we review the city's definitions as a matter of law, according to the normal rules of statutory construction. The city has every right to adopt its own civil service definitions, but the interpretation of those definitions is left to the courts.
The city's argument is that temporary appointments do not fall within the gambit of "original" appointments, and therefore those persons who have been hired on a temporary basis are not required to undergo civil service testing. It claims the phrase "original appointments" is undefined by the city charter so it is within the city's discretion to determine its meaning.
If we understand the city's argument correctly, it makes no distinction between "initial" hires, whom it agrees should be tested "no if's, and's or but's," and persons who have been hired and are serving in positions, but were not tested at the time of hire. See Appellant's Reply Brief at 2.
If, as the city appears to agree, initial hires must be tested, we can see no way of accepting the city's argument that persons who currently hold positions but have not been tested are not "originally hired" under the terms of the city charter. This argument not only contradicts the city's charter, but violates the spirit of the civil service system. Governments established the civil service system in order to ensure that government jobs were awarded on the basis of merit, not politics, favoritism or patronage. State ex rel. Sigall v. Aetna (1976),45 Ohio St.2d 308, 314.
We fail to see how "original" appointments must be made within the spirit of the civil service system, but that "temporary" appointments are not subject to the same requirements. A temporary appointment is made only because the city could not comply with the civil requirements at the time of hire. In fact, the city charter defines a "temporary appointment" as "one made in the absence of an eligible list to a position in the Classified Service of the City pending an examination." (Emphasis added.) This would, of course, explain why the city charter makes temporary appointments valid for only ninety days, so that an eligible list can be created.
The city's position in this case would leave the civil service system open to the kind of abuse which the system purports to end. One of the plaintiffs alleged that he has been a temporary employee for over twenty-two years. The term "temporary" denotes an event that is not permanent, but short in duration and subject to contingencies. Dated in terms of the average person's work-life, twenty-two years cannot remotely be considered temporary.
The city's position would eliminate any requirement that it adhere to its own civil service rules. If it decides it does not wish to test the applicant, it need only appoint that applicant on a temporary basis. This would let the city pick and choose which positions it opens up to competitive testing, allowing it to circumvent testing as it chooses. This result would blatantly flaunt the competitive testing requirements of the charter and do violence to the spirit of the civil service system.
We also reject the city's argument that temporary employees cannot be tested because this would violate the terms of collective bargaining agreements covering those workers. The collective bargaining units are the representatives of affected workers, and only one of those unions tried to intervene in the matter. Moreover, the impact the court's ruling has on the city's collective bargaining agreements was a matter the city should have foreseen when it decided to violate its own charter by refusing to establish eligible lists for competitive hiring.
The court correctly held that the city charter includes "temporary" appointments as a subset within the term "original" appointments. Under the city charter, all new hires are considered "original" regardless whether those persons were hired from eligible lists or on a temporary basis because no eligible list existed. If a person is temporarily appointed to a civil service position, that person may only serve in the position until the temporary term expires. Once that term has expired, the position must be filled by a person chosen from a legitimate eligible list complied in accordance with the civil service rules. The second, third and fourth assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J., and ANN DYKE, J., CONCUR.