OPINION
{¶ 1} Defendant-appellant, Fraternal Order of Police, Captain John C. Post, Lodge No. 44 (Union), appeals from a judgment rendered in favor of plaintiff-appellee, the City of Dayton, on its complaint for declaratory judgment and request for preliminary and permanent injunctions. The Union contends that the trial court erred in concluding that Officer Kenneth Quatman's grievance was not arbitrable because, in accordance with R.C. 4117.10(A), provisions in the City of Dayton Charter providing for appeals to the Civil Service Board prevail over conflicting provisions in the Collective Bargaining Agreement providing for arbitration, as applied to terminations based upon residency requirements.
 {¶ 2} We conclude that the trial court erred in finding that the Collective Bargaining Agreement conflicts with the City of Dayton's Charter regarding appeals for residency requirement terminations. The Charter generally provides that an employee dismissal may be appealed to the Civil Service Board, but there is nothing in the Charter providing that an appeal to the Civil Service Board is the exclusive remedy available to an employee. We conclude, therefore, that the trial court erred in holding that Quatman's grievance was not arbitrable, and therefore erred in denying the Union's counterclaim for declaratory judgment and in granting the City of Dayton's complaint for declaratory judgment and request for preliminary and permanent injunctions.
 {¶ 3} Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
 I {¶ 4} In August, 2004, Kenneth Quatman was charged with failing to be an actual resident of, and physically live in, the City of Dayton while employed as a police officer for the City of Dayton, in violation of the Dayton City Charter. Quatman was also charged with misusing a city vehicle and abusing sick leave privileges, in violation of the City of Dayton Personnel Policies and Procedures Manual. After a disciplinary hearing, Quatman was found guilty of all charges and was discharged from his position as a police officer. The discharge order notified Quatman that he had ten days to file an appeal to the Civil Service Board. Quatman did not file an appeal to the Civil Service Board.
 {¶ 5} During his employment with the City of Dayton, Quatman was a member of a bargaining unit subject to the provisions of a Collective Bargaining Agreement between the City and the Union. The Agreement provides that "[i]n the event that an employee believes any Suspension, Demotion or Discharge is without just cause, such action may be subject to the Grievance Arbitration Procedure or an appeal to the Civil Service Board, at the employee's option." The Union filed a grievance alleging that Quatman was terminated without just cause, in violation of the Agreement. In October, 2004, the Union and the City requested that the grievance be submitted for arbitration. An arbitrator was appointed and an arbitration hearing was scheduled for July, 2005.
 {¶ 6} Shortly before the arbitration hearing, the City informed the Union that the grievance was not arbitrable because residency terminations are to be heard solely by the Civil Service Board, in accordance with the Charter. The City filed a complaint for declaratory judgment and application for preliminary and permanent injunctions to enjoin the arbitration hearing from taking place. The Union filed a counterclaim for declaratory judgment, requesting the trial court to declare Quatman's grievance to be arbitrable and to order the City to proceed to arbitration.
 {¶ 7} After a hearing, the trial court concluded that "the City and the Union agreed to submit to arbitration the `just cause' determination of whether the discharged employee resided outside and physically lived outside the City in violation [of] the Charter's residency rule." However, the trial court went on to conclude that "[b]oth the Charter and the Agreement provide for the factual determination as to whether an employee has resided outside and physically lived outside the City of Dayton in violation of the residency rule. The Agreement allows the determination to be made in a Grievance Arbitration Procedure at the employee's option. The Charter requires the determination be made by the Civil Service Board, whose judgment is final. A clear conflict exists between the Charter and the Agreement." In accordance with R.C. 4117.10(A), the trial court found that the Charter prevailed over the conflicting provisions in the Agreement. Therefore, the trial court denied the Union's counterclaim for declaratory judgment finding that Quatman's grievance was not arbitrable. The trial court entered a declaratory judgment in favor of the City and granted the City's request for preliminary and permanent injunctions enjoining the Union from pursuing Quatman's grievance arising out of his discharge for violating the residency rule to the Grievance Arbitration Procedure. From the judgment of the trial court, the Union appeals.
 II {¶ 8} The Union's assignments of error are as follows:
 {¶ 9} "THE COURT OF COMMON PLEAS ERRED AS A MATTER OF LAW IN DETERMINING THE COLLECTIVE BARGAINING AGREEMENT CONFLICTS WITH THE CITY OF DAYTON'S CHARTER.
 {¶ 10} "THE COURT OF COMMON PLEAS ERRED, AS A MATTER OF LAW IN DETERMINING THE DISCHARGE FOR VIOLATION OF THE CITY OF DAYTON POLICIES AND PROCEDURES MANUAL WAS NOT ARBITRABLE.
 {¶ 11} "THE COURT OF COMMON PLEAS ERRED AS A MATTER OF LAW IN DENYING FRATERNAL ORDER OF POLICE, CAPTAIN JOHN C. POST LODGE NO. 44'S COUNTERCLAIM FOR DECLARATORY JUDGMENT.
 {¶ 12} "THE COURT OF COMMON PLEAS ERRED AS A MATTER OF LAW IN GRANTING INJUNCTIVE RELIEF."
 {¶ 13} The Union contends that the trial court erred in concluding that the Collective Bargaining Agreement conflicts with The City of Dayton's Charter to the extent that the Charter's provisions would prevail over the provisions in the Agreement allowing an employee dismissal to be appealed to arbitration. The Union argues that the Charter does not include any provision requiring that the factual determination whether an employee resides or physically lives outside the City of Dayton is to be made solely by the Civil Service Board.
 {¶ 14} The City contends that the Collective Bargaining Agreement does conflict with The City of Dayton's Charter, because it allows residency terminations to be appealed to arbitration, whereas the Charter requires residency terminations to be appealed to the Civil Service Board. Therefore, the City argues that the conflicting provision of the Agreement is unenforceable pursuant to R.C. 4117.10(A), and Quatman's grievance is not arbitrable.
 {¶ 15} Because general principles of statutory construction apply in this case and a question of law is at issue, we will conduct a de novo review. See Hayslip v. City of Akron (1984),21 Ohio App.3d 165, 166, 21 OBR 176, 486 N.E.2d 1160; Yommer v.Outdoor Ent., Inc. (1998), 126 Ohio App.3d 738, 740,711 N.E.2d 296.
 {¶ 16} R.C. 4117.10(A) provides, in pertinent part, that "[a]n agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissions have no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure. Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees. Laws pertaining to civil rights, affirmative action, unemployment compensation, workers' compensation, the retirement of public employees, and residency requirements, * * * prevail over conflicting provisions of agreements between employee organizations and public employers."
 {¶ 17} "When a provision in a collective bargaining agreement addresses a subject also addressed by a state or local law, so that the two conflict, R.C. 4117.10(A) delineates whether the collective bargaining provision or the law prevails. To do this, R.C. 4117.10(A) specifies certain areas in which laws will prevail over conflicting provisions of collective bargaining agreements. Consequently, where a provision of a collective bargaining agreement is in conflict with a state or local law pertaining to a specific exception listed in R.C. 4117.10(A), the law prevails and the provision of the agreement is unenforceable. However, if a collective bargaining provision conflicts with a law which does not pertain to one of the specific exceptions listed in R.C. 4117.10(A), then the collective bargaining agreement prevails." Streetsboro Edn. Assn. v. Streetsboro CitySchool Dist. Bd. of Edn. (1994), 68 Ohio St.3d 288, 291,626 N.E.2d 110, citations omitted.
 {¶ 18} "Hence, the analysis employed to resolve whether the collective bargaining agreement or the state or local law prevails is straightforward: (1) Initially, we examine the relevant provision of the collective bargaining agreement and the relevant state or local law, and ask whether the agreement and the law conflict. (2) If there is a conflict, we then ask whether the conflicting law pertains to one of the areas listed in R.C.4117.10(A). The law prevails if the two questions above are answered in the affirmative. If that is the case, the conflicting provision in the collective bargaining agreement is unenforceable." Id. In this case, the City of Dayton Charter provides that "[a]ll employees in the Civil Service of the City of Dayton, appointed after the effective date of this Charter section, must and shall be actual residents of and physically live in the City of Dayton at the time of their appointment, and shall continue to be actual residents and physically live in the City of Dayton during the term of their employment." The Charter further provides that a violation of this provision shall result in discharge. The Charter provides that "[a]ny employee of any department in the city in the classified service who is suspended, reduced in rank, or dismissed from a department by the director of that department or the City Manager, may appeal from the decision of such officer to the Civil Service Board, and such Board shall define the manner, time, and place by which such appeal shall be heard. The judgment of such board shall be final."
 {¶ 19} The Agreement is silent regarding any residency requirements and therefore, does not conflict with the Charter in this regard. The Agreement does not provide that employees do not have to reside and physically live in the City of Dayton or that an employee will not be terminated for violating the residency rule. The Agreement does provide that "[i]n the event that an employee believes any Suspension, Demotion or Discharge is without just cause, such action may be subject to the Grievance Arbitration Procedure or an appeal to the Civil Service Board, at the employee's option."
 {¶ 20} We conclude that this provision of the Agreement does not conflict with the Charter. There is nothing in the Charter requiring that residency-requirement terminations, or termination for any other cause, for that matter, can only be appealed to the Civil Service Board. The City's labor relations manager, Brent McKenzie, testified to the same at the hearing before the trial court stating that he was not aware of any provision in the Charter providing that an appeal of a residency issue can only be made to the Civil Service Board. The Charter merely provides that an employee dismissal may be appealed to the Civil Service Board. The Agreement does not conflict with this provision; it, too, provides that the employee may appeal a dismissal to the Civil Service Board, but it adds the additional option of arbitration.
 {¶ 21} Even if the provision in the Charter for appeal to the Civil Service Board were deemed to establish that remedy as the exclusive remedy available to a discharged employee, so that the provision did conflict with the Agreement, we would nevertheless hold in favor of the Union. R.C. 4117.10(A), upon which the City relies, provides generally that a collective bargaining agreement may provide for binding arbitration, which will prevail over any contrary provisions for review by a civil service commission, but that statute contains a number of exceptions, one of which is as follows: "Laws pertaining to * * * residency requirements, * * * prevail over conflicting provisions of agreements between employee organizations and public employers." (Emphasis added.)
 {¶ 22} To "pertain" has been defined as: "To belong or relate to, whether by nature, appointment, or custom." Black's Law Dictionary, Revised Fourth Edition. In Webster's Third New International Dictionary, to "pertain" is defined as follows:
 {¶ 23} "1a(1): to belong to something as a part or member or accessory or product those who ~ed to the Christian tradition — J.D. Conway (2): to belong to something as an attribute or adjunct or attendant feature or function the destruction and havoc~ing to war a job that ~ s to one man alone (3): to belong to something as a care or concern or dutyresponsibilities that ~ to fatherhood (4): to belong to something by inherent character, right, assignment, or established association privileges that ~ ed only to the wealthier class b: to be appropriate to something: be right or proper or suitable trades ~ ing to military activities —Amer. Guide Series: Minn.: be pertinent the criteria for their appointments will be different from those that ~ elsewhere in the faculty — J.B. Conant 2: to have some connection with or relation to something: have reference: RELATE in matters tildeing to man and his environment — Current Biog. his intention to translate some historical documents ~ ing to Christopher Columbus — Saxe Commins the enormous stress which women lay on everything ~ ing to clothes — P.M. Gregory"
 {¶ 24} Of the definitions of to "pertain" set forth in Webster's, we find the last to be the most appropriate in this case. It expressly incorporates the concept of a particular relationship between the two things that causes one to pertain to another, although this concept seems, also, to underlie the other definitions.
 {¶ 25} Thus, the issue is whether the Dayton City Charter provisions upon which the City relies can be said to "pertain" to the residency requirement. In our view, they are too general to permit a finding that they pertain to the residency requirement. Article X, Section 101 of the Charter provides that all
suspensions, reductions in rank, and dismissals may be appealed to the Civil Service Board, not just those actions resulting from violation of the residency requirement. Had the Charter provided language along the lines of: "including, but not limited to, adverse employment actions based upon violation of residency requirements," then we might be inclined to hold that there was a specific "reference" in the Charter provision to the residency requirement for it to be said that the Charter provision "pertained" to the residency requirement, for purposes of R.C.4117.10(A), but without that specific reference, we conclude that the Charter provision does not "pertain" to the residency requirement, being completely general in scope.
 {¶ 26} In any event, we conclude that Article X, Section 101 of the Charter is not in conflict with the Agreement, since both the Charter provision and the Agreement provide that an employeemay appeal an adverse employment decision to the Civil Service Board, without, however, specifying that an appeal to the Civil Service Board shall be the only remedy available to the employee. Accordingly, we conclude that the trial court erred in holding that Quatman's grievance is not arbitrable and therefore erred in denying the Union's counterclaim for declaratory judgment and in rendering declaratory judgment for the City of Dayton and allowing the City injunctive relief.
 {¶ 27} Given our resolution of the Union's first argument, we need not address the Union's remaining arguments that the trial court erred in denying Quatman his right to arbitrate his discharge based upon violations of the sick leave and vehicle use policies and in issuing injunctive relief where other adequate legal remedies were available to the City.
 {¶ 28} The Union's assignments of error are sustained.
 III {¶ 29} All of the Union's assignments of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
Wolff and Valen, JJ. concur.
(Hon. Anthony Valen, retired from the Twelfth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).